IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOHN ALLEN BOSTIC,

       Plaintiff,

v.                                              CASE NO. 2:11-cv-00392

MICHAEL J. ASTRUE,
**Commissioner of Social Security,**

       Defendant.

## M E M O R A N D U M   O P I N I O N

      This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge.

      Plaintiff, John Allen Bostic (hereinafter referred to as "Claimant"), filed an application for DIB on June 30, 2009, alleging disability as of November 29, 2008, due to chronic lumbar/ neck/shoulders/hip pain, and a heart murmur.[1] (Tr. at 17, 144-45, 167-74, 200-05, 210-16.) The claim was denied initially and upon reconsideration. (Tr. at 17, 93-

---

[1] Claimant filed a previous claim for benefits. On September 15, 2006, Claimant protectively filed applications for DIB and SSI payments alleging disability beginning January 3, 2003. The Title XVI claim was technically denied due to excess income. The Title II claim was initially denied on December 20, 2006, and on reconsideration on August 7, 2007, and on September 12, 2007, a request for hearing was filed. On May 15, 2008, a hearing was held before another ALJ. On November 28, 2008, an unfavorable decision was issued. (Tr. at 77-86.) On December 4, 2008, Claimant filed a request for review of the hearing decision with the Appeals Council. On May 29, 2009, the Appeals Council denied the request for review. On June 18, 2009, Claimant filed an appeal with the United States District Court, Southern District of West Virginia (Civil Action #2:09-cv-623). The ALJ's hearing decision was affirmed by the United States District Court, Southern District of West Virginia on August 8, 2010. Bostic v. Astrue, No. 2:09-cv-00623, 2010 WL 2710546 (S.D.W.Va. 2010, Stanley, M.J.). Claimant did not appeal. On April 7, 2010, Claimant filed an application for retirement insurance benefits. Claimant started receiving retirement benefits beginning May 2010. (Tr. at 17.)

97, 99-101.) On October 15, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 102.) The hearing was held on November 10, 2010 before the Honorable James J. Kent. (Tr. at 32-73, 111, 117.) By decision dated November 23, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 17-28.) The ALJ's decision became the final decision of the Commissioner on May 4, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-8.) On June 2, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2002). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work.  Id. §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

      In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 20.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease of the lumbar spine, cervical disc disease, clavicle impairment, and leg impairment, from the alleged onset date of November 29, 2008, through the date last insured of December 31, 2008.  (Tr. at 20-22.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 22.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 22-25.)  As a result, Claimant could return to his past relevant work through the date last insured.  (Tr. at 25-26.)  On this basis, benefits were denied.  (Tr. at 28.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was 62 years old at the time of the administrative hearing. (Tr. at 39.) He has a high school education. (Tr. at 173.) In the past, he worked as a craft maintenance supervisor, shift supervisor, and operator at a hydroelectric and metal manufacturing plant for approximately thirty-five years until his retirement in 2003.[2] (Tr. at 40-46, 56-60, 175-

---

[2] Claimant states that on April 2, 2002 he had a motor vehicle accident in which he sustained injuries to his cervical and lumbar spines, a collapsed lung, right hip and left shoulder. He was off work for approximately six months. He returned to work, took six weeks of remaining vacation time, and retired effective January 3, 2003. In 2003, Claimant was in a motorcycle accident in which he fractured

76.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it below. The undersigned notes that the relevant time period is November 29, 2008 (the alleged onset date) through December 31, 2008 (the date last insured).

Records indicate that Claimant was treated at Fayette County Chiropractic on thirty occasions between June 20, 2008 and August 16, 2010. (Tr. at 245-54, 285-314.) Claimant had no treatment at Fayette County Chiropractic during the relevant time period of November 29, 2008 through December 31, 2008. The initial office visit notes from June 20, 2008, states that Claimant presented with complaints of neck, bilateral shoulder and low back pain "after doing a number of things around his house all week. He says that he has washed his deck and painted it and cut grass and done all manner of things and now he is hurting in all of these regions." (Tr. at 285.) The notes from the April 1, 2009 office visit state:

> This patient presents to us today complaining of the onset of cervicothoracic and low back pain bilaterally two weeks ago after having to saw up a bunch of trees that had blown down at his house. He says that he had been doing well until then although he is not hurting badly now he states it does interfere with his ADLs [activities of daily living] and his sleep and makes it more difficult for him to do anything. He denies any radiation of the pain into the upper or lower extremities or any other trauma. He does have decreased range of motion in both the cervical and lumbar regions today in all directions due to pain and tightness of the associated musculature.

---

his right clavicle which resulted in the insertion of a plate and screws in his right clavicle. Claimant injured his neck while swing a golf club in September 2006. He herniated a neck disc at C6-7 . He developed right shoulder and arm pain. On September 18, 2006, Claimant underwent an anterior cervical discectomy and fusion at the C6-7 level. (Pl.'s Br. at 3. )

5

(Tr. at 245, 294.)

Records indicate Claimant received lumbar epidural steroid injections at L2-L3 on December 22, 2008 and May 12, 2009 from Christopher Kim, M.D.  (Tr. at 229-30, 233-36.)  On February 17, 2009, Claimant reported his "pain level is 4 out of 10.  He reports about 20% improvement of back pain."  (Tr. at 231.)  The progress notes from the May 12, 2009 visit state:

> Pain is 5 out of 10.  He reports aching sensation…
>
> He had lumbar epidural steroid injection about 5 months ago with excellent pain relief but pain started coming back after about three months of relief.
>
> Patient is still able to function with some limitations.  Increased activity and prolonged sitting and walking make the pain worse…
>
> Plan is to repeat the lumbar epidural steroid injections to see if this will help.  Patient has done well for the last 4-5 months with injections.

(Tr. at 229.)

On July 30, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment.  (Tr. at 237-44.)  The evaluator, Uma Reddy, M.D., stated that Claimant's primary diagnosis was "Chronic Cervical Strain with DDD [Degenerative Disc Disease]" and his secondary diagnosis, "Hyperlipidemia."  (Tr. at 237.)  Dr. Reddy concluded Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and had unlimited ability to push and/or pull.  (Tr. at 238.)  Dr. Reddy marked that Claimant had no postural limitations except he was limited to performing climbing of ladder/rope/scaffolds and crawling "occasionally."   (Tr. at 239.)  Claimant's only

manipulative limitation was "reaching in all directions (including overhead)" due to "post cervical laminectomy syndrome with chronic neck pain." (Tr. at 240.) Claimant had no visual or communicative limitations. (Tr. at 240-41.) Claimant had no environmental limitations save to avoid concentrated exposure to extreme temperatures, vibration, and hazards. (Tr. at 241.) Dr. Reddy noted:

> 60 years old at 12/08 DLI [date last insured] time period with allegation of chronic cervical strain and pain due to DDD, undergone cervical laminectomy, still on pain medications and has no neuro deficit and is on meds for his hyperlipidemia. Over all he is partially credible and for the 12/08 DLI time period his residual functional capacity [residual functional capacity] is reduced as noted here, but no listing limitations.

(Tr. at 242.)

On October 1, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment. (Tr. at 255-62.) The evaluator, Marcel Lambrechts, M.D. stated that Claimant's primary diagnosis was "neck pain, S/P cervical fusion C6-7" and his secondary diagnosis, "Hyperlipidemia." (Tr. at 255.) He stated that Claimant's date last insured was December 31, 2008 and concluded that he agreed with the opinion of Dr. Reddy: "There are no new reports since DLI that would change the original decision. It is affirmed as written." (Tr. at 255, 262.)

Records indicate Claimant was treated at New River Health Association on seven occasions from November 11, 2008 to October 29, 2009 for a variety of medical problems, including hyperlipidemia, chronic pain syndrome, degenerative arthritis/disc disease, and ear ache/pressure. Claimant had no treatment at New River Health Association during the relevant time period of November 29, 2008 through December 31, 2008. (Tr. at 263-74.)

On November 13, 2009, Mary E. McKelvey, M.D., New River Health Association,

7

gave Claimant testing for prostate cancer screening, hypocholesterolemia, and vitamin D deficiency. (Tr. at 320.) Claimant had no treatment with Dr. McKelvey during the relevant time period of November 29, 2008 and December 31, 2008.

On November 24, 2009, Dr. McKelvey's nurse informed Claimant of his vitamin D deficiency and his "need to try a different antidepressant, as insurance does not cover cymbalta…new med is called celexa and he will start with 20 mg po qd." Id.

On December 10, 2009, Dr. McKelvey completed a "Medical Assessment of Ability to do Work-Related Activities (Physical)" form. (Tr. at 275-79.) Dr. McKelvey marked that Claimant could lift/carry 10-15 pounds maximum occasionally and maximum frequently "very little"; could stand/sit for a total of "30 minutes" in an 8-hour work or "15 minutes" without interruption; and could sit for a total of "1 hour" in an 8-hour workday or "20 minutes" without interruption. (Tr. at 276-77.) Dr. McKelvey marked that Claimant could "Never" do any of the postural activities due to "pain in upper and lower extremities, pain in back and neck from degenerative arthritis." (Tr. at 277.) She marked that Claimant was limited in the physical functions of reaching, handling, feeling, pushing and pulling due to "cervical radiculopathy affecting upper extremities" and "degenerative cervical disc disease." (Tr. at 278.) She marked that Claimant's physical functions of seeing, hearing, and speaking were not affected by his impairments. Id. She marked that Claimant's impairments caused him to have environmental restrictions in all areas due to "anxiety and depression on Valium and Wellbutrin…hyperlipidemia and past h/o [history of] HTN [hypertension] - extremes also make his pain worse." (Tr. at 278.) Dr. McKelvey commented: "His multiple medical problems make it impossible to do his job or any physical labor. At age 61, he is not a good candidate for re-training, particularly when

psychological factors are considered." (Tr. at 279.)

Records indicate that Claimant was treated on nine occasions by Dr. McKelvey, M.D. from December 15, 2009 to August 26, 2010 for various ailments including: "feeling tired or poorly...Anxiety. Depression...Skin lesion on left lower leg...Still awaiting disability – it is totally unfair that he has waited so long...Headache from cervical DDD...Controlled Med Refill...Lortab 10/500mg tablet." (Tr. at 316-20.)

The final office visit note from Fayette County Chiropractic dated August 16, 2010 states:

> This patient presents to us today stating he just got back from vacation in Tennessee and all the traveling and some work while he was there has aggravated his neck and mid back region especially as well as making his low back feel tighter. He denies any other trauma or injury and all range of motion is within normal limits today although slightly painful. I used the intersegmental traction and did CMT [chiropractic manipulative therapy] and will follow-up with him on an as needed basis.

(Tr. at 314.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ erred when he failed to give controlling weight to the opinion of Claimant's treating physician, Dr. McKelvey, "regarding the limitations imposed by lumbar discogenic disease, clavicle impairment and cervical disc disease." (Pl.'s Br. at 10.) Claimant asserts that the ALJ's conclusion that Dr. McKelvey's "opinion regarding physical limitations imposed by his medical conditions are not supported by his treatment notes is not supported by the record." (Pl.'s Br. at 11.) Claimant asserts that Dr. McKelvey's "opinion is supported by her opportunity to examine and treat the plaintiff on numerous occasions and by appropriate clinical findings without any substantial evidence to support

the examples which she cited to support her conclusion." (Pl.'s Br. at 14.) Claimant states:

> Due to the failure of the ALJ to provide controlling weight to the opinion of the plaintiff's treating physician regarding the plaintiff's functional capacity, without substantial evidence to support his opinion, the ALJ's finding that the plaintiff can perform work at the light exertional level with the above-described limitations is erroneous.
>
> Dr. McKelvey's opinion that the plaintiff could not complete an 8 hour work day was supported by all of her treatment records and several special reports prepared for this claim. The plaintiff's testimony was consistent with this finding. The record does not support the ALJ's attempt to discredit Dr. McKelvey's opinion.

(Pl.'s Br. at 15-16.)

The Commissioner's Response

The Commissioner responds by first pointing out that in order to be eligible for DIB in this case, Claimant "needed to prove that he became disabled during the thirty-three day period between November 29, 2008 - his alleged disability onset date and the day after the ALJ's decision in his 2006 claim - and December 31, 2008, the date his insured status under the Act expired." (Def.'s Br. at 4.) The Commissioner asserts that substantial evidence supports the ALJ's evaluation of Dr. McKelvey's December 2009 opinion because:

> First, Dr. McKelvey's opinion is not well-supported by her own treatment records, which...reflect mainly unremarkable or normal objective physical and psychological findings, as well as only a limited number office visits by Plaintiff (Tr. 262-66, 271-72, 276-79, 318-20).
>
> Second, Dr. McKelvey's opinion was also not well-supported in that it: 1) relates to Plaintiff's condition and limitations as of December 10, 2009, which is nearly one year after the expiration of Plaintiff's date last insured and, thereby, the time period relevant to this case; and 2) was rendered on a check-the-box type form and not accompanied by an explanatory report...
>
> A third reason Dr. McKelvey's opinion is entitled to little weight is because it is inconsistent with the findings of two state agency consultants, who

> independently reviewed the record and, like the ALJ, found that Plaintiff had the residual functional capacity to perform a range of light work through his December 31, 2008 date last insured (Tr. 22, 25, 63, 237-45, 255, 262)...
>
> A fourth reason Dr. McKelvey's opinion is entitled to little weight is because it is inconsistent with the treatment records of Dr. Kim (Tr. 24). More particularly, on examination by Dr. Kim on December 17, 2008 - which was during the time period relevant to this matter - Plaintiff was alert and full oriented, well-developed, and in no acute distress (Tr. 235)...Dr. Kim's findings and treatment records do not come even remotely close to confirming that Plaintiff experienced the debilitating limitations identified in Dr. McKelvey's December 2009 opinion.
>
> Another reason that Dr. McKelvey's opinion was not entitled to significant weight is because the extreme limitations set forth therein were inconsistent with some of Plaintiff's acknowledged activities and capabilities (Tr. 23-25). For example, during the pendency of this claim, Plaintiff admitted that he cut grass with a garden tractor; did a good deal of yard work; sawed down trees; read; tinkered in the garage; went to the post office; occasionally attended church; played guitar and bluegrass music with his family; washed and painted his deck; did a lot of traveling and driving; used a weed whacker; cleaned out a ditch; shopped in stores; took out the trash; performed light repairs and housework; watched TV; was able to pay bills, use a checkbook, and handle a savings account; visited family and friends; and had no problems getting along with family, friends, neighbors, or authority figures (Tr. 54-55, 188-95, 285-96).
>
> The foregoing admissions and activities by Plaintiff are manifestly incompatible with a person who claims to suffer incapacitating impairments. Moreover, because of when Plaintiff provided them, most of these admissions and activities relate to the time after the expiration of Plaintiff's insured status on December 31, 2008. However, they are nonetheless pertinent, since Plaintiff does not argue that his condition improved after his November 29, 2008 alleged onset date or his date last insured.
>
> Lastly, Dr. McKelvey's opinion does not merit significant weight because her statement that Plaintiff "was not a good candidate for retraining" was very likely outside her area of expertise, and her notation that Plaintiff was unable "to do his job or any physical labor" on account of his medical problems was an opinion on a dispositive issue (disability) reserved to the Commissioner and, therefore, not entitled to any special significance pursuant to 20 C.F.R. § 404.1527(e)(3)(Tr. 279).

(Def.'s Br. at 16-19.)

Analysis

Claimant argues that the ALJ erred in evaluating Dr. McKelvey's December 10, 2009 medical opinion and in finding that the doctor's opinions were not supported by the record. (Pl.'s Br. at 10-16.)

The ALJ made these findings regarding Dr. McKelvey's reports, including the December 10, 2009 report, and the State agency medical source opinions:

> Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, cervical disc disease, clavicle impairment, and leg impairment (20 C.F.R. § 404.1520 (c))...
>
> On January 8, 2010, Dr. McKelvey diagnosed cervical degenerative disc disease (Exhibit B-12F)...
>
> On November 11, 2008, Dr. McKelvey reports the claimant is status-post plates and screws in the clavical area (Exhibit B-5F)...
>
> Treatment notes from Dr. McKelvey include a diagnosis of generalized osteoarthritis (Exhibit B-5F).
>
> Dr. McKelvey diagnosed hypertension, hyperlipidemia, hypercholesterolemia, and hypertriglyceridemia. The record shows medication has been prescribed to control these impairments (Exhibit B-5F). Accordingly, it appears these impairments are medically determinable but have resulted in no significant limitations in the claimant's ability to perform basic work activities. Therefore, the undersigned concludes hypertension, hyperlipidemia, hypercholesterolemia, and hypertriglyceridemia are non-severe impairments (20 C.F.R. § 404.1521 and SSR 96-3p)...
>
> On October 29, 2009, Mr. Bostic presented to Dr. McKelvey with complaints of depression, anxiety, and insomnia. Dr. McKelvey prescribed Valium and Celexa, psychotropic medications, to treat the claimant's emotional problems (Exhibit B-12F). The claimant's medically determinable mental impairment of depression and anxiety did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and was therefore nonsevere...
>
> In July 2009, a state agency non-examining reviewing physician concluded that through December 31, 2008 (date last insured), the claimant could perform light work with moderate limitation in reaching in all directions

> (including overhead) and he should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards (Exhibit B-2F); in October 2009, another state agency reviewing physician found no new evidence since the date last insured; and affirmed the decision (Exhibit B-4F). These opinions are consistent with long-term treatment modality and objective medical tests. Therefore, the undersigned gives significant weight to the opinions of these state agency consultant physicians.
>
> On February 9, 2009, Mary McKelvey, M.D., the claimant's treating physician, noted that the claimant "still has not gotten his disability yet," which she thought was ridiculous. Dr. McKelvey opined the claimant certainly could not return to the kind of heavy work that he used to do with the musculoskeletal abnormalities and at age 60, he really is not able to retain [sic; retrain] into something else (Exhibit B-5F, page 2). Dr. McKelvey's opinion appears to rest at least in part on an assessment of an impairments outside the doctor's area of expertise. Additionally, Dr. McKelvey's opinion is an issue reserved to the Commissioner and is also inconsistent with other evidence of record. Therefore, the undersigned gives little weight to Dr. McKelvey's opinion. The undersigned has considered and evaluated all the evidence of record, including the hearing testimony.
>
> On December 10, 2009, Dr. McKelvey completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Dr. McKelvey opined the claimant could left [sic; lift] 10 to 15 pounds very little; could stand/walk for 30 minutes in an eight-hour day, 15 minutes without interruption; sit for one hour in an eight-hour day, 20 minutes without interruptions; could never climb, balance, stoop, kneel, crouch, or crawl; has limited ability to perform reaching, handling, feeling, and pushing/pulling; and should avoid exposure to heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, humidity, and vibration. He has multiple medical problems that make it impossible to do his job or any physical labor. At age 61, he is not a good candidate for retraining, particularly when psychological factors are considered (Exhibit B-6F). Dr. McKelvey's opinion is not supported by objective and credible evidence of record (long-standing degenerative arthritis, no change, treatment notes indicated good results from surgery, and some improvement from injections from Dr. Kim), and remain inconsistent with the claimant's daily activities that reveals no change in activity level (Exhibit B-1A and B-5E). Therefore, the undersigned gives little weight to Dr. McKelvey's opinion.

(Tr. at 20-21, 25.)

The ALJ made these findings regarding Claimant's daily activities:

> As previously discussed in the decision, on July 22, 2009, Mr. Bostic reported

13

> that his daily activities include reading the newspaper, watching television, going to the post office and grocery store, doing light housework, loading the dishwasher, sweeping the kitchen floor, mowing the law with a garden tractor, tinkering in the garage, caring for the dog, taking care of personal hygiene with occasional difficulty, preparing meals, performing light repairs, taking out the trash, dusting, making the bed, driving, paying bills, managing finances, fishing, reading, playing guitar and harmonica (Exhibit B-5E). Chiropractic notes [dated 06/20/08 to 08/16/10] from Bobby Green, D.C., show the claimant performed a variety of chores including, weed-eating, cutting wood, painting, cutting grass, washing off the deck and painting it, cleaning out a ditch, playing music for several hours with relatives, driving on vacation, playing with a dog, operating a snowplow to remove snow, and raking leaves (Exhibits B-3F ad B-11F). At the hearing [November 10, 2010], Mr. Bostic testified that his daily activities include dusting, preparing simple meals, helping around the house, cutting grass, and playing bluegrass music with relatives. The claimant described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

(Tr. at 23.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(d)(2) (2010). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(d)(2) (2010). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) (2000). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty

14

to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. § 404.1527. These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(d)(2).

Under § 404.1527(d)(1), more weight is given to an examiner than to a non-examiner. Section 404.1527(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 404.1527(d)(2)(I) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 404.1527(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The court finds that the ALJ's decision reflects a careful consideration of Claimant's impairments, both alone and in combination in keeping with the applicable regulations.

Contrary to Claimant's assertions, the ALJ did not disregard the opinion of Claimant's treating physician, Dr. McKelvey, when considering Claimant's disability and functional capacity. The undersigned concludes that the ALJ did not err in declining to give weight to Dr. McKelvey's December 10, 2009 assessment finding Claimant had a very limited or no ability to function in several physical work-related areas. As explained by the ALJ, such extreme limitations were not supported by Dr. McKelvey's treatment records which show mostly unremarkable or normal objective physical findings. Also, Claimant had no office visits with Dr. McKelvey during the relevant time period of November 29, 2008 through December 31, 2008. (Tr. 263-74, 276-79, 316-20). Dr. McKelvey's opinion relates to Claimant's health as of December 10, 2009, nearly one year after the expiration of Claimant's date last insured. Dr. McKelvey's opinion is also inconsistent with the findings of two State agency consultants, who independently reviewed the record and, like the ALJ, found that Claimant had the RFC to perform a range of light work through his December 31, 2008 date last insured. (Tr. 237-44, 255-262.) Dr. McKelvey's opinion is also inconsistent with the December 17, 2008 treatment records of Dr. Kim, who in recommending lumbar epidural injections found Claimant was in "no acute distress" during his examination. Dr. Kim's examination was done during the relevant time period of November 29, 2008 through December 31, 2008. (Tr. 235-36.) Dr. Kim also noted that Claimant had no heart murmurs. Id.

The court also finds that the ALJ correctly concluded that Dr. McKelvey's December 10, 2009 assessment is not entitled to significant weight because the limitations she set forth for Claimant are contrary to Claimant's acknowledged activities and capabilities: "The claimant has described daily activities, which are not limited to the extent one would

16

expect, given the complaints of disabling symptoms and limitations." (Tr. 23). The undersigned notes that many of Claimant's admissions of activities relate to the time after the expiration of his insured status on December 31, 2008 and he has not asserted that his medical conditions improved after the relevant period of November 29, 2008, his alleged onset date, through December 31, 2008, his date last insured.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 9 , 2012

Mary E. Stanley
United States Magistrate Judge